UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

KENTRELL WELCH,

           Plaintiff,

vs.

MICHAEL MINEV et al.,

           Defendant.

Case No.: 2:19-cv-01064-GMN-BNW

**ORDER**

      Pending before the Court are Defendants Gregory Bryant, Alberto Buencamino, Louie Gallo, Michael Minev, Jennifer Nash, Charles Paternostro, and Brian William's (collectively "Defendants'") Motion for Summary Judgment, (ECF No. 156). Plaintiff Kentrell Welch ("Plaintiff") filed a Response, (ECF No. 186), to which Defendants filed a Reply, (ECF No. 190).

      For the reasons discussed below, the Court **GRANTS** Defendants' Motion for Summary Judgment.

**I.    BACKGROUND**

      This case arises out of Defendants' alleged indifference to Plaintiff's serious medical needs while he was incarcerated at High Desert State Prison ("HDSP").[1] (*See generally* Am. Compl., ECF No. 8). Plaintiff alleges he has suffered from hyperthyroid chronic disease from 2014 to the present. (Am. Compl. at 6). This disease occurs when the thyroid glad malfunctions. (*Id.*). Plaintiff's hyperthyroid disease causes him to suffer form severe weight

---

[1] Plaintiff sues Defendants NDOC Director Michael Minev ("Dr. Minev"), Doctor Gregory Bryant ("Dr. Bryant"), Correctional Officer ("C/O") Louie Gallo ("C/O Gallo"), C/O Charles Paternostro ("C/O Paternostro"), Tito Buenocamino ("Buenocamino"), Warden Brian Williams ("Warden Williams"), and Associate Warden Jennifer Nash ("Associate Warden Nash"). (Am. Compl. at 2–4, ECF No. 8).

loss, insomnia, diarrhea, vertigo, severe headaches, and constant throat pain. (*Id*.). In 2017, while at HDSP, Plaintiff almost suffered from a coma due to severe malnutrition and weight loss. (*Id*.). Plaintiff suffered day and night form a "numbing burning pain sensation." (*Id*.). Plaintiff requested a hematology blood panel to test for carpal tunnel, rheumatism, rheumatoid arthritis, or neuritis in order to test for an alternative chronic disease. (*Id*.). Plaintiff alleges, however, that Dr. Bryant and Dr. Minev ignored the request. (*Id.*). Plaintiff further alleges that Dr. Bryant told him to let his thyroid condition burn itself out. (*Id*. at 7). At another appointment, Dr. Bryant allegedly denied Plaintiff thyroid throat surgery because Dr. Minev told Dr. Bryant to deny surgeries due to budgeting issues. (*Id*.)

On June 27, 2019, while Plaintiff was at a medical appointment, C/O Gallo and C/O Paternostro intervened when they told the doctor it was "count time" and that Plaintiff had to go back to his housing unit. (*Id*.) Usually, when an inmate had a medical visit during count, the C/Os conducted an "outcount" and permitted inmates to go back to their medical appointments after the count ended. (*Id*.) However, when Plaintiff requested this procedure, C/O Paternoster and C/O Gallo threatened to pepper spray and put Plaintiff down. (*Id*.)

Plaintiff alleges Dr. Bryant and the other medical staff knew about Plaintiff's condition because they witnessed him hobble through the facility. (*Id*.) Plaintiff maintains that Dr. Bryant watched Plaintiff's condition deteriorate for several years but continued to ignore Plaintiff's requests to seek outside treatment. (*Id*.) Dr. Bryant stated that he did not see anything in the labs or charts that were causing Plaintiff's symptoms and complications. (*Id*.).

Plaintiff asserts Dr. Bryant, Dr. Minev, Warden Williams, Associate Warden Nash, C/O Gallo, and C/O Paternoster ignored Plaintiff's daily suffering. (*Id*. at 8). Plaintiff alleges that Dr. Bryant and Dr. Minev failed to intervene and permit Plaintiff to see a different nurse after the nurse who was conducting Plaintiff's blood draw was incompetent as evidenced by her "multiple needle poking." (*Id*.) Plaintiff notified the wardens about his chronic condition

complaints, but they failed to provide chronic care treatment to Plaintiff. (*Id*.) On August 7, 2019, a hematology panel analyzed Plaintiff's blood lab and concluded that Plaintiff has been dually suffering from hyperthyroid condition and rheumatoid arthritis. (*Id*. at 9).

Plaintiff filed the instant action on August 6, 2019. (Compl., ECF No. 6). On August 16, 2019, Plaintiff filed his first Amended Complaint, alleging that pursuant to 42 U.S.C. § 1983, Defendants deliberate indifference to his serious medical conditions violated his Eighth Amendment rights. (Am. Compl. at 6). On October 19, 2021, Defendants filed a Motion for Summary Judgment. (Mot. Summ. J. ("MSJ"), ECF No. 156).

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co*., 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002)

1  (internal citations omitted).  "The mere existence of a scintilla of evidence in support of the
2  plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the
3  nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations
4  that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).
5  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set
6  forth specific facts by producing competent evidence that shows a genuine issue for trial. *See*
7  *Celotex Corp.*, 477 U.S. at 324.

8      At summary judgment, a court's function is not to weigh the evidence and determine the
9  truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.
10 The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn
11 in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is
12 not significantly probative, summary judgment may be granted. *See id.* at 249–50.

13     Fed. R. Civ. P. 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration
14 that, for specified reasons, it cannot present facts essential to justify its opposition, the court
15 may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or
16 declarations or to take discovery; or (3) issue any other appropriate order."  To obtain relief
17 under Rule 56(d), the nonmovant must show "(1) that [he or she] ha[s] set forth in affidavit
18 form the specific facts that [he or she] hope[s] to elicit from further discovery, (2) that the facts
19 sought exist, and (3) that these sought-after facts are 'essential to resist the summary judgment
20 motion." *State of Cal. v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998).

21 **III.**    **DISCUSSION**

22     As a preliminary matter, Defendants argue that they are entitled to summary judgment
23 because Plaintiff failed to exhaust his administrative remedies for the grievances alleged in this
24 suit. (MSJ 7:24–9:24).  Plaintiff, in rebuttal, asserts that he did not have to fully exhaust the
25

administrative grievance procedure because the prison's administrative remedy was effectively unavailable to him. (Resp. 7:1–10:9).

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement in prisoner cases is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Further, the PLRA requires "proper exhaustion" of administrative remedies. *Id*. at 93. Proper exhaustion "means that a grievant must use all steps the prison holds out, enabling the prison to reach the merits of the issues." *Griffin v. Arpaio*, 557 F.3d 1117, 1119–20 (9th Cir. 2009).

Courts should decide exhaustion before examining the merits of a prisoner's claim. *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014). The defendant bears the initial burden to show that there was an available administrative remedy, and that the prisoner did not exhaust it. *Id*. at 1169, 1172. Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies "or come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. at 1172. The ultimate burden, however, rests with the defendant. *Id*. Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id*. at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

Defendants' Motion for Summary Judgment includes a copy of the NDOC Administrative Regulation ("NDOC AR") 740, entitled "Inmate Grievance Procedure," which catalogs the administrative remedies and associated procedures available to NDOC inmates. (Ex. D to MSJ, ECF No. 156-1). For a plaintiff to exhaust available remedies, NDOC AR 740 first requires the inmate to either discuss the issue with a staff member or submit an inmate

request form prior to initiating the grievance process. *Id*. at 740.08(1). For claims regarding medical issues, the procedure continues as follows: (1) an Informal Grievance, which is "responded to by a charge nurse or designee of the Director of Nursing," *Id*. at 740.08; (2) a First-Level Grievance appealing the Informal Grievance decision to the "highest level of Nursing Administration," *Id*. at 740.09; and (3) a Second-Level Grievance, which is decided by the Medical Director, *Id*. at 740.10. "An inmate whose grievance is denied in its entirety may appeal the grievance to the next level . . . unless the action requested has already been Granted at a lower level." *Id*. at 740.03(6). An inmate may appeal a grievance of any level to the following level within five days after the return of a decision. *Id*. at 740.08(12)(A), 740.09(5)(A). However, the grievance process is complete once a grievance is granted at any level; an inmate cannot appeal a granted grievance. *Id*. at 740.03(6)(C).

An inmate need not exhaust when circumstances render administrative remedies "effectively unavailable." *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010). In *Ross v. Blake*, the Supreme Court articulated that an inmate was only required to exhaust those grievance procedures "that are capable of use to obtain some relief for the action complained of." 578 U.S. 632, 643 (2016). *Ross* provided a non-exhaustive list of circumstances where administrative remedies was not capable of use: (1) where the procedure "operates as a simple dead end" because officers are "unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use" because "no ordinary prisoner can discern or navigate it"; and (3) when prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 643–44.

///

///

///

Defendants argue that Plaintiff failed to exhaust his administrative remedies prior to filing this case.[2] Plaintiff's claim relies on five grievances he filed. (*See* Ex. C. to MSJ, ECF No. 158-2 Grievance Nos. 20063088376,. 20063085873, 20063085640 20063084218. 2006306063). In regards to the first grievance number 20063088376, Plaintiff did not appeal the Informal Grievance decision. (*Id*.). As to the second grievance number 20063085873, Plaintiff did not appeal the Informal Grievance decision. (*Id*.). The third grievance number 20063085640, Plaintiff again did not appeal the Informal Grievance decision. (*Id*.). Plaintiff did timely appeal the fourth grievance number 20063084218, but he appealed the Informal Grievance only to the First Level Grievance. (*Id*.). When the First Level Grievance was denied, Plaintiff did not appeal that decision to the Second Level Grievance. (*Id*.). The fifth grievance number 2006306063, Plaintiff again timely appealed the Informal Grievance to the First Level Grievance. However, when the First Level Grievance was denied, Plaintiff did not appeal that decision to the Second Level Grievance. (*Id*.). Defendants assert that Plaintiff's failure to proceed through the full three-level process in any of the grievances demonstrates Plaintiff's failure to exhaust. *See Booth v. Churner*, 532 U.S. 731, 739 (2001). The Court finds that Defendants have met their initial burden of showing that there was an available administrative remedy which Plaintiff did not exhaust. *Albino*, 747 F.3d at 1169, 1172. The burden now shifts to Plaintiff to produce evidence demonstrating that these remedies were effectively unavailable to him before he filed this suit. *Id*. at 1172.

Plaintiff argues that "prison officials have been unable or unwilling to consistently provide him relief when he has filed grievances." (Resp. 7:11–13). Plaintiff further asserts that

---

[2] Plaintiff alleges that his claims extend back to 2014. AR 740.05(4)(A) specifies that an inmate must file an informal grievance within six months if the issue involves "personal injury, medical claims or any other tort claims, including civil rights claims." *Id*. Plaintiff was required to file an informal grievance within six months of any incident. Accordingly, Plaintiff's claims which were not part of the grievances he filed before initiating this suit are barred as untimely.

the "grievance procedures have been opaque because the prison officials have created a convoluted maze of requirements and deadlines . . . ." (*Id*. 7:13–16).  The former does not provide evidence of how Defendants have thwarted Plaintiff's efforts to utilize the administrative grievance procedure; instead, it expresses dissatisfaction with the results of the procedure. *See Soremukun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory statements, speculative opinions, . . ., or other assertions uncorroborated by facts are insufficient to establish a genuine dispute.").  The latter restates the legal standard. *See Ross*, 578 U.S. at 643–44.  It merely concludes that Plaintiff has been unable to navigate the administrative grievance procedure without explaining how and why. (*Id.*).

Moreover, Plaintiff notes that NDOC AR has "undergone some changes during the period of September 2014 and November 2018." (Resp. 10:1–5).  Plaintiff contends that these changes "at least cast some doubt on the transparency of the grievance process" and Plaintiff's ability to navigate the process. (*Id.*).  However, Plaintiff cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Taylor*, 880 F.2d at 1045.  Plaintiff's counsel has failed to explain how these changes affected Plaintiff's ability to exhaust his administrative remedies.  To the contrary, Plaintiff continued to file many grievances even after the changes to the NDOC AR in 2018, including filing fifteen in just 2020.[3] (*See* Ex. C to MSJ, 158-1 Grievance Nos. 20063099561, 20063098848, 20063098615,

---

[3] Plaintiff's counsel also notes that Plaintiff alleged in his first Complaint that people have "expressed bewilderment as to why medical won't treat him." (Resp. 7:22–25).  It is unclear to the Court how this stand-alone allegation tends to show either that prison officials have thwarted Plaintiff's attempt to utilize the grievance process or that the grievance process is an unworkable maze for Plaintiff.  The same holds true for Plaintiff's arguments that there may have "potential issues of dispute how the officials explained the process to [Plaintiff]," (Resp. 7:16–22), and that there were "improprieties regarding getting the grievance paperwork." (Resp. 9:23–28).  Absent from the first statement is any indication of how the process was explained to Plaintiff and any concrete examples of how it interfered with Plaintiff's ability to complete the grievance process.  The second is devoid of any examples or explanation of Defendants depriving Plaintiff of the necessary paperwork.  As previously mentioned, the numerous grievance reports filed by Plaintiff suggest that he had no problem navigating the administrative grievance procedure or received any needed paperwork to file grievances.

20063098349, 2006309813, 20063098161, 20063098068, 20063097580, 20063097426, 20063097092, 20063096824, 20063096134, 20063096032, 20063095219, and 20063094888).

Accordingly, because Plaintiff failed to demonstrate that administrative remedies were effectively unavailable to him, his claim must be denied for failure to exhaust.[4]  As such, the Court grants summary judgment in favor of Defendants.

## IV.  CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 156), is **GRANTED**.  It is **FURTHER ORDERED** that Plaintiff's Motion to Re-open Discovery, (ECF No. 219), Motion for Temporary Restraining Order, (ECF No. 221), Motion for Preliminary Injunction, (ECF No. 245), and Motion of Affirmative Defenses Objections, (ECF No. 228), are **DENIED as moot**.

**DATED** this __7__ day of October, 2022.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT

---

[4] Plaintiff argues that under *Jones v. Bock*, his entire case should not be dismissed because there are both exhausted and unexhausted claims. 549 U.S. 199, 221–22 (2007) (concluding that the failure to exhaust administrative remedies for one claim does not mandate dismissal of other, exhausted claims in the same lawsuit); (Resp. 8:4–17).  However, Plaintiff fails to identify which of his claims, if any, are exhausted. Although Plaintiff identifies an Emergency Grievance that was submitted on June 27, 2019, (Resp. 9:16–22), Plaintiff fails to demonstrate that the grievance procedure was properly exhausted through the grievance process' three mandatory levels.  Indeed, records show Plaintiff did not appeal the Informal Grievance decision. (Ex. C to MSJ, 158-2 Grievance No. 20063085640).  Alternatively, Plaintiff does not state why is failure to exhaust should be excused.  The same reasoning applies to the November 30, 2016, Emergency Grievance cited by Plaintiff. (Resp. 8:26–9:4).